# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **ROSE MARIE BRYANT,** | } |
| | } |
|     **Plaintiff,** | } |
| | } |
| v. | }    Case No.: 4:21-CV-01270-RDP |
| | } |
| **KILOLO KIJAKAZI,** | } |
| **ACTING COMMISIONER OF** | } |
| **SOCIAL SECURITY** | } |
| | } |
|     **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Rose Marie Bryant brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed her application for disability and DIB on August 14, 2018 in which she alleges her disability began on December 1, 2017. (TR. 182). Her claim was denied initially and upon review. (TR. 219). Plaintiff next requested a hearing before an Administrative Law Judge ("ALJ"). (TR. 217). Plaintiff's request was granted and a hearing was held on November 21, 2019, before ALJ Mary Helmer. (TR. 155-78). Plaintiff, her attorney, and a vocational expert ("VE") were in attendance at the hearing. (TR. 155).

On December 11, 2019, the ALJ entered an unfavorable decision finding that Plaintiff had not been under a disability, as defined by the Act, from December 1, 2017 through the date of the

decision. (TR. 200-08). On February 7, 2020, Plaintiff appealed the ALJ's decision to the Appeals Council claiming the decision was not based on substantial evidence and that the ALJ failed to apply appropriate legal standards. (TR. 153).

On September 2, 2020, the Appeals Council granted Plaintiff's request for review under the substantial evidence provision of 20 C.F.R. § 404.970. Under 20 C.F.R. § 404.977, the Appeals Council vacated the ALJ's December 11, 2019 decision and remanded the case to an ALJ to: (1) give consideration to the medical source opinion of Dr. Oguntoya and, if necessary, request additional evidence and/or further clarification from him; (2) further consider Plaintiff's residual functional capacity ("RFC") and provide appropriate rational with specific references to evidence of record, including the opinion of Dr. Oguntuyo, in support of the assessed limitations; and (3) obtain supplemental evidence from a VE to clarify the effect of the assessed limitations on Plaintiff's occupational base. (TR. 213-14). After remand, another hearing was held on January 21, 2021 before ALJ Mary Helmer. (TR. 77-94, 97-118). In attendance were Plaintiff, her attorney, and a VE. (*Id.*).

On March 10, 2021, the ALJ entered a decision that determined Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (TR. 80-88). The ALJ determined that Plaintiff has the RFC to perform "light work" with limitations, and is capable of performing her past relevant work as an assembler. (TR. 84, 88). On August 8, 2021, the Appeals Council denied Plaintiff's request to review the ALJ's second decision, thereby making that decision the final decision of the Commissioner and a proper subject of this court's appellate review.

At the time of the second hearing, on January 21, 2021, Plaintiff was 55 years old and had received a GED. (TR. 99). Her past relevant work includes that of a cutting machine operator and an assembly line worker. (TR. 99, 158-61). Plaintiff alleges that she suffers from back, leg, and foot pain that began in 2010. (TR. 102-04). Plaintiff also alleges having numbness and pain in her hands since 2017. (TR. 105). Plaintiff contends that she has been unable to engage in substantial gainful activity since December 2017 due to these impairments. (TR. 82). Plaintiff has smoked cigarettes for over 30 years. (TR. 811). The ALJ noted that she remains fairly independent (*e.g.*, prepares simple meals, drives, completes household chores), and does not need reminders to take care of her personal needs. (TR. 85).

During her purported period of disability, Plaintiff received treatment from various primary care providers. At a primary care visit at Floyd Medical Center on October 30, 2018, Plaintiff was diagnosed with multilevel minimal to mild degenerative disk disease at L2-5. (TR. 764). This diagnosis was supported by an MRI of her lumbar spine, XR Lumbar Spine AP, and Lateral Exam that showed minimal disc bulges at L2-3 and L3-4, but "circumferential disc bulge and bilateral foraminal annular fissures" at L4-5. (TR. 756, 764). On November 29, 2018, Plaintiff presented to Menlo Family Medicine with complaints of acute exacerbation of bronchitis and ongoing lower back pain causing pain into her legs with reported weakness. (TR. 775-76). Plaintiff stated that she could "no longer work" due to her back pain and leg pain. (TR. 776).  However, in that same visit, her musculoskeletal results showed "no contractures, malalignment, tenderness, or bony abnormalities and normal movement of all extremities; some limitation with flex/extend lumbar." (*Id.*). Further, in December 2018 at a follow up visit with Dr. Witt at Menlo Family Clinic, a physical exam showed "normal gait and station" as well as no musculoskeletal issues. (TR. 799). At an appointment at Harbin Clinic in January 2020, Plaintiff reported chronic back pain that had

3

started earlier that day and a pain level of 3/10. (TR. 820). Plaintiff was prescribed cyclobenzaprine, famotidine, gabapentin, Lyrica, and meloxicam, and pravastatin. (TR. 820). At a later visit in October 2020 at Cherokee Quality Health Care, it was noted that Plaintiff's pain was well controlled as she rated her pain level a 2/10. (TR. 1115).

Plaintiff was also treated for chronic bronchitis, a form of Chronic Obstructive Pulmonary Disease ("COPD"). (TR. 1095). Plaintiff asserts that her symptoms, including shortness of breath, are a factor that contribute to her inability to work. (TR. 110). However, at an emergency room visit to Floyd Medical Center in November 2017, Plaintiff listed "no shortness of breath" as a respiratory symptom. (TR. 649). At another emergency room visit to Floyd Medical Center in August 2018, Plaintiff complained of dizziness, but again reported no "shortness of breath," and Dr. Jackson did not "appreciate any wheezes, rales, rhonchi, or pleural rub." (TR. 721, 736). In a November 2018 visit to Menlo Family Medicine with Dr. Witt, medical records showed "decreased breath sounds and diminished air movement." (TR. 774). At a follow-up visit with Dr. Witt at Menlo Family Medicine in December 2018, Plaintiff complained of coughing and wheezing. (TR. 799). However, upon examination, Plaintiff showed "no wheezing, rales/crackles, or rhonchi and breath sounds normal, good air movement." (*Id.*). At several visits to Primary Health Care in 2020, Plaintiff's lungs were "clear to auscultation good air exchange" and repeatedly denied any respiratory issues. (TR. 1073, 1084, 1095-96). These visits illustrate that Plaintiff's bronchitis has been stable since 2018. (TR. 87).

Plaintiff additionally claims she suffers from arterial disease, a vascular disease that affects your arteries and can cause poor circulation and joint pain. (TR. 206). During an emergency room visit in August 2018 to Floyd Medical Center, Plaintiff reported no "joint pain." (TR. 721). Although an x-ray of Plaintiff's lumbar spine, done at the request of Dr. Witt in October 2018,

4

noted "heavy arterial disease is seen" (TR. 766), at a follow up visit with Dr. Witt at Floyd Medical Center in November 2018, Plaintiff had "no significant blockages in carotid arteries." (TR. 811).

On December 5, 2018, Dr. Jimmy Oguntuyo, a consultative examining physician, conducted a disability evaluation of Plaintiff, noting that her "gait is good…hand grip is good; bilaterally 5/5…good strength against resistance after repetitive exercise…able to heel walk, toe walk and perform the squat and rise tests." (TR. 790). Further, he found Plaintiff had normal range in motion, including her cervical spine, except for a slightly decreased range of motion in her dorsolumbar spine. (TR. 793-794). Dr. Oguntuyo opined that Plaintiff would most likely be unable to perform work activities that involve prolonged sitting, standing, walking, lifting, carrying, or handling objects. (TR. 84, 88). However, these findings were unsupported by his medical examination. (TR. 791). Dr. Oguntuyo diagnosed Plaintiff with lumbago with sciatica, simple chronic bronchitis, hypertension, and obesity. (TR. 790). At that time, Plaintiff's medications included Meloxicam, Flexeril, Ranitidine, Pravastatin, Aspir, and Niacin. (*Id.*).

Plaintiff further submitted an independent medical examination completed by Dr. Janie Teschner on December 13, 2020 as new evidence to the Appeals Council. (TR. 2, 143). Dr. Teschner reviewed "multiple office visits…at several clinics dating from 2010 to present." (*Id.*). Dr. Teschner also completed a physical examination on Plaintiff and found that she "wheezes diffusely" has "distant breath sounds bilaterally" and a "barrel chest." (TR. 147). The examination revealed that Plaintiff's "muscle strength graded at 3/5 in the biceps, triceps, wrist flexors and extensors bilaterally (5/5 normal)" and her "range of motion of the lumbar spine reveal[ed] forward flexion to 45 degrees (90 degrees normal), extension to 15 degrees (30 degrees normal), right lateral flexion to 35 degrees (45 degree normal), and left lateral flexion to 35 degrees (45 degrees normal)." (TR. 148). Dr. Teschner additionally completed a physical capacity form finding

Plaintiff can only sit upright in a standard chair at one time for less than 30 minutes, can only stand at one time for less than 15 minutes, and in an eight-hour period, she would need to lay down, sleep, or sit with her legs propped at waist level due to her medical condition for seven of those hours. (TR. 151). Dr. Teschner further stated in the physical capacities form that Plaintiff can occasionally reach, handle, finger and feel with her left hand, however weakness ensues after less than 30 seconds of doing so. (*Id.*). Dr. Teschner also found that Plaintiff has side effects of drowsiness and dizziness from her medication. (*Id.*). In her report, Dr. Teschner concluded that Plaintiff

> has moderately-severe disability based on her lung disease, lumbar spine disease, motor weakness of BLE due to spinal stenosis and foraminal stenosis with disc bulge, neuropathy of lumbar spine and diabetic origins, peripheral arterial disease with claudication, chronic peripheral edema, carpal tunnel syndrome, chronic pain. She has quit her job and truly is unable to work.

(TR. 149).

## II.   ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." 20 C.F.R. § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of this criteria, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may

not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's RFC, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff has not engaged in substantial gainful activity and has the following severe impairments: arterial disease, obesity, and chronic bronchitis. (TR. 82-83). The ALJ further determined that Plaintiff's mild degenerative disc disease to be a non-severe impairment. The ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

C.F.R. § 404, Subpart P, Appendix 1." (TR. 84). The ALJ further determined that Plaintiff had the RFC to perform light work[1] with the following limitations:

> [s]he should not climb ladders, ropes or scaffolds. She should avoid all excessive vibration, unprotected heights, and hazardous machinery. She should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, poorly ventilated areas, and chemicals. She should avoid concentrated exposure to extreme heat, extreme cold, and extreme humidity. She can frequently balance, stoop, kneel, crouch, and crawl.

(TR. 84-85).

The ALJ further held that "no further limitations are supported by the medical evidence." (TR. 87). The ALJ found at step four that Plaintiff is "capable of performing past relevant work as an assembler." (TR. 88). As a result of this finding, the ALJ concluded, pursuant to 20 C.F.R. § 404.1520(f), that Plaintiff is not disabled as defined under the Act for the period beginning December 1, 2017 to the date of the decision, March 10, 2021. (*Id.*).

### III.     Plaintiff's Argument for Reversal

Plaintiff argues for reversal, and in the interest of carefully examining the merits of her claims, the court has scrutinized Plaintiff's brief and identified five specific arguments: (1) The ALJ "wrongly rejected the opinion of Dr. Jimmy Oguntuyo, the Consulting Physician for the Commissioner," "failed to recontact Dr. Oguntuyo to determine the basis of his opinion," and "failed to state with at least some measure of clarity the grounds for her decision in repudiating the opinion of Dr. Oguntuyo" (Doc. #6 at 1, 21); (2) the ALJ "failed to adequately consider [Plaintiff's] testimony concerning the side effects of [her] pain medication" (*Id.* at 31, 39); (3) in reviewing the second ALJ hearing, the Appeals Council "denied review and erroneously held that

---

[1] Under § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Further, "light work" jobs generally "require a good deal of walking or standing, or ... involve sitting most of the time with some pushing and pulling of arm or leg controls." *Scott v. Comm'r of Soc. Sec.*, 440 F. App'x 726, 727 (11th Cir. 2011); *see* 20 C.F.R. § 404.1567(b).

new evidence did not show a reasonable probability that it would change the outcome of the decision" (*Id*. at 2, 33); (4) the ALJ erred in finding that Plaintiff "can perform past work" as that determination was not based on substantial evidence and incorrect legal standards were applied (Doc. #6 at 2, 41); and (5) the ALJ's decision is not based on substantial evidence. (Doc. #6 at 2, 46).

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is

limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.     Discussion

As indicated below, and for the sake of organization, the court has grouped Plaintiff's allegations into categories based on the subject matter of each allegation and considered by category. After carefully considering Plaintiff's arguments, the court concludes substantial evidence supports the ALJ's decision to deny disability benefits and the ALJ applied correct legal standards.

### A.     The ALJ Did Not Err in Determining That Dr. Oguntuyo's Opinion Was Unpersuasive

Plaintiff first argues the ALJ gave insufficient weight to the opinion of Dr. Oguntuyo, the consultative physician for the Commissioner. In her decision, the ALJ discussed the consultative medical examination conducted by Dr. Oguntuyo. (TR. 84). The ALJ did not specify the weight given to Dr. Oguntuyo's testimony. Rather she addressed its persuasiveness in light of the 2017 amendments to 20 C.F.R. § 404.1520(c). Those amendments state that no deference or evidentiary weight will be given to "any medical opinion(s) or prior administrative medical finding(s)"; instead, when "a medical source provides one or more medical opinions or prior administrative medical findings we will consider those … from that medical source together using [supportability, consistency, relationship with the claimant, specialization, and other factors]." 20 C.F.R. § 404.1520(c).

In her decision, the ALJ concluded the findings of Dr. Oguntuyo were unpersuasive due to the lack of objective medical evidence supporting them. The ALJ recognized that the consultative medical examination performed by Dr. Oguntuyo in December 2018 showed "there was a decreased range of motion of the dorsolumbar spine during flexion and decreased peripheral

10

sensation of the feet, left greater than right." (TR. 84, 790). Dr. Oguntuyo diagnosed Plaintiff with lumbago with sciatica, left side; simple chronic bronchitis; essential (primary) hypertension; obesity, unspecified; dizziness and giddiness; and a nicotine dependence. (TR. 790-91). He further opined that Plaintiff

> may not be able to perform any meaningful work related activities that may involve prolonged sitting, standing, walking, lifting, carrying, handling objects, because of the worsening chronic low back pain with associated radiation of pain to the lower extremities, progressively worsening shortness of breath with minimal exertion from chronic bronchitis.

(TR. 791).

There is substantial evidence, not only in other medical records, but in the same consultative examination, that indicates otherwise. For example, x-ray imaging of Plaintiff's back revealed only minimal to mild degenerative disc disease; during a 2020 visit Plaintiff had rated her back pain as 2/10; at the consultative examination with Dr. Oguntuyo in 2018, her hand grip was "good; bilaterally 5/5," "she had good strength against resistance after repetitive exercise … was able to heel walk, toe walk, … perform squat and rise tests," and also " button, tie shoelaces, pick up small objects, hold a glass, and turn a doorknob." (TR. 763, 790, 1115). The court concludes there is substantial evidence in the record to support the ALJ's determination.

### 1. The ALJ Was Not Required to Recontact Dr. Oguntuyo

Plaintiff also argues the ALJ was required to recontact Dr. Oguntuyo to "determine the basis of his opinion." (Doc. #6 at 22). Plaintiff states "an ALJ cannot substitute his judgment for that of the medical and vocational experts." (*Id*.). However, merely finding medical testimony unpersuasive does not indicate a substitution of the medical expert's judgment.

The Appeals Council, in its earlier decision to remand after the first ALJ hearing, stated that the ALJ *may* recontact Dr. Oguntuyo if additional evidence or further clarification was needed. (TR. 214) (emphasis added). Further, the Panel in *Jones v. Social Security Administration,*

11

*Commissioner*, 138 F. App'x 587, 591 (11th Cir. 2021), recognized an ALJ is not required to recontact the consultative physician, it is merely an option. As in *Jones*, Plaintiff relies on *Johnson v. Barnhart*, 138 F. App'x 266, 270-271 (11th Cir. 2005), which states that if "after weighing the evidence, the Commissioner cannot reach a determination, then she will seek additional information or recontact the physicians." *Id*.; (Doc. #6 at 24). But here, just as in *Jones*, the ALJ was able to make a determination based on the evidence and information she was given, and was not required to contact Dr. Oguntuyo. (*Id*.).

### 2. Whether the ALJ Stated With "Some Measure of Clarity" the Grounds for Her Decision

Plaintiff also asserts that the ALJ failed to state with "some measure of clarity" the grounds for her decision to find the examining physician's finding unpersuasive. (Doc. #6 at 23). This argument misses the mark because (1) the ALJ did in fact adequately explain the basis for the determination and (2) in any event, following the 2017 amendments to 20 C.F.R. § 404.1520(c), the court need only do that.

### B. The ALJ Adequately Considered Plaintiff's Testimony Concerning the Side Effects of Her Pain Medication

Plaintiff next claims that the ALJ erred by not adequately considering her testimony concerning the side effects of her pain medication. "In the Eleventh Circuit, while the ALJ must consider any subjective complaints regarding a medication's side effects, the claimant has the duty to 'introduce evidence supporting her claim that her symptoms (including any medication side effects) make her unable to work.'" *Stout v. Saul*, No. 4:19-CV-1559-RDP, 2020 WL 4904192, 6 (N.D. Ala. Aug. 20, 2020) (citing *Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366 (11th Cir. 2010)). In *Swindle v. Sullivan,* 914 F.2d 222 (11th Cir. 1990), the Eleventh Circuit rejected a claimant's argument that an ALJ failed to take into account side effects of medications because the ALJ noted that:

12

> [the claimant] did not complain of side effects, with the exception that she felt that one medication might be giving her headaches, and the record did not disclose any concerns about side effects by the several doctors who examined and treated her. The ALJ's determination that side effects from medication did not present a significant problem is therefore supported by substantial evidence.

*Id.* at 226.

Similarly, here, Plaintiff's argument focuses only on her testimony that the "medications cause[d] her to use the restroom every 20 to 30 minutes and stay drowsy." (Doc. #6 at 31, 39; TR. 110). The ALJ specifically explained how she considered these side effects and, based on this evidence, "included limitations in [Plaintiff's] residual functional capacity … due to the actual or potential effects of these medications." (TR. 87). The court also notes that this analysis is consistent with what actually occurred at the hearing as the ALJ included these limitations and more in each of the hypotheticals that were presented to the vocational expert. (TR. 113-14). Further, substantial evidence supports the ALJ's finding that there is no medical record of Plaintiff reporting these side effects—frequent bathroom breaks and/or being drowsy—in any of her visits to her primary care physician. (TR. 87). There is no medical evidence from any of Plaintiff's medical visits stating she had any issues with urination. (TR. 123, 615, 826, 889, 946, 1048, 1095). Nor did Plaintiff point to any other *medical* evidence that support her allegations about side effects. Thus, the ALJ did not err in her consideration of the side effects of Plaintiff's medication and the court rejects this argument.

    **C.    The Appeals Council Did Not Err in Denying Review and Consideration of New Evidence**

Plaintiff contends that the Appeals Council erred in denying review and consideration of the "new evidence" she presented to them after the ALJ's decision on March 10, 2021. "'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Walters v. Comm'r, Soc. Sec. Admin.*, No. 4:21-

CV-01348-ACA, 2022 WL 1671114 (N.D. Ala. May 25, 2022) (other citations omitted). Further, the Appeals Council "must review evidence that is new, material and chronologically relevant" and does so *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007); *Washington v. Soc. Sec. Admin, Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). Under 20 C.F.R. § 404.970(c), any new evidence submitted must relate to the period on or before the date of the ALJ hearing decision – here, between December 1, 2017 and March 10, 2021. Similarly, if evidence is within the proper time frame, the Appeals Council will review a case if there is a "reasonable probability that the additional evidence will change the outcome of the ALJ's decision." 20 C.F.R. § 404.970(a)(5).

Plaintiff submitted for reconsideration the following "new evidence": (1) medical records from Floyd Medical Center dated March 12, 2021 to April 14, 2021; (2) the independent medical examination conducted by Janie Teschner dated December 3, 2020; and (3) medical records from Primary Healthcare Center dated December 18, 2020 to February 18, 2021. (TR. 2).

The medical records from Floyd Medical Center were not considered by the Appeals Council because they "do[] not relate to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(c).

With regard to the other evidence submitted, the Appeals Council stated in their decision:

> You submitted evidence from Janie Teschner, M.D., December 3, 2020, 1 page; and Primary Healthcare Centers, December 18, 2020 to February 18, 2021, 22 pages. We find this evidence does not show a reasonable probability that it would change the outcome of the decision.

(TR. 2). This shows the Appeals Council followed the legal standard set out in § 404.970, and reviewed the evidence submitted as was necessary. The Appeals Council did not commit reversible error (and, further, Plaintiff has certainly not explained why the Appeals Council erred). This argument is without merit.

### D. There is Substantial Evidence to Support the ALJ's Decision

#### 1. Substantial Evidence and Legal Standards Support the ALJ's Finding That Plaintiff Can Perform Past Work

Finally, Plaintiff argues substantial evidence does not support the ALJ's finding that she could perform past relevant work. (Doc. #6 at 41). Plaintiff states "[t]he ALJ did not consider all of the duties of [her] past work and evaluate her ability to perform those duties." (Doc. #6 at 46-47). Past relevant work is work activity that is (1) substantial gainful activity; (2) was performed long enough for the claimant to achieve average performance, and (3) it was performed within the relevant period. (TR. 88); SSR 82-62. A claimant must show that she cannot perform her past relevant work. Further, "[w]hen determining whether a claimant can perform past relevant work, the ALJ may rely on the testimony of a [vocational expert] as well as the [Dictionary of Occupational Titles] and information that the claimant provides about their work history." *McGhee v. Soc. Sec. Admin., Comm'r*, 826 F. App'x 894 (11th Cir. 2020); *see also*, 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2). It is uncontested that the work performance in the assembler position qualifies as past relevant work.

As stated earlier, Plaintiff's past relevant work included that of a cutting machine operator and assembly line worker. (TR. 99, 158-161). As the ALJ found:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 C.F.R. § 404.1567(b) *except she has the following limitations that reduce her capacity to perform the full range of light exertion work*: she should have no operation of foot controls. She should not climb ladders, ropes or scaffolds. She should avoid all excessive vibration, unprotected heights, and hazardous machinery. She should avoid concentrated exposure to pulmonary irritants such as fumes, odors, dust, gases, poorly ventilated areas, and chemicals. She should avoid concentrated exposure to extreme heat, extreme cold, and extreme humidity. She can frequently balance, stoop, kneel, crouch, and crawl.

(TR. 84-85) (emphasis added).

The Dictionary of Occupational Titles ("DOT") Code 585.565-010 lists cutting machine operation as one of medium exertion, which is beyond the scope of Plaintiff's ability. (TR. 88). However, DOT Code 706.684-022 lists assembler as a light exertion, unskilled job. (TR. 88). To ensure this was applicable to Plaintiff, the ALJ presented a hypothetical to the vocational expert inquiring "whether an individual of the same age that had the same educational level, past relevant work, and [RFC] as [Plaintiff] could perform [her] past relevant work. The vocational expert stated that such an individual could perform the job of an Assembler." (TR. 88). A review of the VE's answers to other hypotheticals shows there is substantial evidence to support the ALJ's decision that Plaintiff can perform past relevant work as an assembler. Further, the legal standards were properly followed by the ALJ as she correctly relied on the DOT, VE, and medical records of Plaintiff in arriving at a decision.

### 2.     There is Substantial Evidence to Support the ALJ's Overall Decision

Plaintiff argues generally that the ALJ's decision is not supported by substantial evidence. (Doc. #6 at 46). In that subsection, Plaintiff makes blanket statements that (1) the ALJ disregarded the consultative examiner, (2) the Appeals Council disregarded the physical capacity evaluation of Dr. Teschner, (3) the ALJ relied on VE testimony not correctly based on hypotheticals that encompassed her full limitations and impairments, and (4) that the hypothetical questions "assumed [she] could work." (Doc. #6 at 46-47). However, Plaintiff makes no further arguments other than these cursory statements and does not explain what exactly was wrong with the ALJ's hypotheticals.

Again, the ALJ did not "disregard" Dr. Oguntuyo's opinion; rather, the ALJ found it "unpersuasive" following 20 C.F.R. § 404.1520(c). (Doc. #6 at 46, TR. 84). It is not reversible error for an ALJ to find a consultative examiner's opinion unpersuasive, especially when the ALJ appropriately explains why it is unpersuasive. With regard to the Appeals Council disregarding

16

Dr. Teschner's physical capacity evaluation, the Appeals Council followed the appropriate legal standard in addressing this new evidence. Further, Dr. Teschner's physical capacity evaluation is simply a check list and that evaluation did not operate to expand her findings or provide medical evidence to support them. (TR. 151). It is further important to note that frequent bathroom breaks are not a side effect that Dr. Teschner lists in her form. (*Id.*).

Lastly, Plaintiff contends that the ALJ relied on VE testimony that is not based on her full limitations and impairments. Plaintiff, however, does not explain what limitations and impairments are missing nor what information should have been added to the hypotheticals. Plaintiff has the burden to put forth evidence that the ALJ would need to include (or should have included) in the hypotheticals to the VE. 20 C.F.R. § 404.1520(a)(4)(iv). A review of the record shows there is substantial evidence to support the ALJ's decision and reasoning as to why Plaintiff's subjective side effects were not used in the hypothetical questions. Plaintiff further claims that the hypotheticals assumed that she could work. But, Plaintiff provides no further argument or legal standard that supports her contention. Regardless, the ALJ based all hypotheticals on Plaintiff's RFC, along with the proper limitations that the ALJ found necessary as to Plaintiff's conditions. (TR. 84-85). Thus, there is substantial evidence to support the ALJ's determinations on these issues and the ALJ did not apply incorrect legal standards here.

## VI.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this June 17, 2022.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE